IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| MARY MALLARD ALONZEAU, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE,[1] )<br>COMMISSIONER OF SOCIAL )<br>SECURITY, )<br>)<br>Defendant. )<br>_____) | CIVIL ACTION NO. 0:06-02926-MBS-BM<br><br>**REPORT AND RECOMMENDATION** |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) on August 31, 2001, alleging disability as of March 14, 2001 due to lower back and left leg pain. (R.pp. 48, 66-69, 76). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on December 13, 2002. (R.pp. 29-47). The ALJ thereafter denied Plaintiff's claim in a decision issued January 24, 2003. (R.pp. 13-25).

The Appeals Council denied Plaintiff's request for a review of the decision on May

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g) (2000).



1, 2003; (R.pp. 6-10); however, on May 19, 2004 the undersigned entered an order of reversal with remand of the cause to the Commissioner for further administrative proceedings. (R.p. 259); see Alonzo v. Barnhart, C/A No. 0:03-2106. New hearings were then held on February 9, 2005 and June 29, 2005, following which the ALJ issued a decision on August 13, 2005 again denying Plaintiff's claim. (R.pp. 290-302). However, the case was remanded back to the ALJ by the Appeals Council on November 23, 2005 for a new hearing and decision; (R.pp. 314-318); following which a new hearing was held on June 29, 2006. (R.pp. 371-383). The ALJ thereafter denied Plaintiff's claim in a decision dated August 15, 2006. (R.pp. 216-225). Plaintiff then sought judicial review pursuant to 20 C.F.R. § 404.984.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)). The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642.



"[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## Discussion

A review of the record shows that Plaintiff, who was forty-three (43) years old when she alleges her disability began, has a high school education with past relevant work experience as a school bus driver and receptionist. (R.pp. 48-49, 66-67, 77, 82, 89-96, 111). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. Further, since Plaintiff only had coverage for DIB through December 31, 2002; (R.p. 217); in order to obtain DIB Plaintiff must prove that she was disabled on or before that date. See 42 U.S.C. § 423(a); 20 C.F.R. §§ 404.130, 404.131.

After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from "severe" impairments[2] that render her unable to perform her past relevant work, she nevertheless retained the residual functional capacity to perform a limited range of sedentary work[3], and was therefore not disabled. (R.pp. 219). Plaintiff asserts that in reaching this

---

[2] An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a) ["An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities"]; Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

[3] Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying

3



decision, the ALJ erred by not properly considering Plaintiff's obesity, by improperly evaluating the opinion evidence, by conducting a faulty listing analysis, and by improperly determining Plaintiff's residual functional capacity (RFC) for work. However, after careful review and consideration of the arguments and evidence presented, the undersigned finds that there is substantial evidence in the record to support the conclusion of the ALJ that Plaintiff was not disabled as that term is defined in the Social Security Act during the relevant time period, and that the decision of the Commissioner should therefore be affirmed.

Pursuant to SSR 02-01p, a claimant's obesity should be considered in determining the claimant's RFC. Further, although there is no listing for obesity under the Listing of Impairments[4], SSR 02-01p provides that an individual with obesity can meet the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing, or if there is an impairment that, in combination with obesity, meets the requirements of a listing. Plaintiff argues that the ALJ failed to consider and evaluate Plaintiff's obesity in accordance with these requirements. The undersigned does not agree. The ALJ found that Plaintiff's obesity was a severe impairment. (R.p. 219). He also noted Plaintiff's subjective testimony that she could not bend or stoop, and that she has been restricted by her physician to jobs that require no constant bending or twisting. (R.pp. 220-221). The ALJ also considered a medical source statement completed on March 17, 2005 by Dr. Kerri Kolehma, in which Dr. Kolehma opined that Plaintiff would be limited in her ability to

---

out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (2005).

[4]In the Listings of Impairments, "[e]ach impairment is defined in terms of several specific medial signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). A claimant is presumed to be disabled if their impairment meets the criteria of an impairment set forth in the Listings. See 20 C.F.R. §§ 416.925, 416.926 (2003).

4



push and pull with her lower extremities due to her morbid obesity and severe osteoarthritis, as well as a Residual Functional Capacity Assessment completed on December 21, 2001, where, in the opinion of Plaintiff's treating family doctor, Plaintiff's capability to do light work[5] was decreased to sedentary "considering her massive weight". (R.pp. 184, 223). Further, in addition to finding that Plaintiff's obesity was by itself a severe impairment, the ALJ found that Plaintiff suffered from degenerative disc disease, degenerative joint disease, and low back pain, all of which were also severe impairments. (R.p. 219). The ALJ also discussed Plaintiff's objective medical findings reflecting disc bulges and protrusions, osteoarthritic changes, and that Plaintiff suffered from knee and low back pain which allowed her to semi-squat for only a limited time, together with medical reports showing her excessive weight and advice from her physicians to lose weight. (R.pp. 221-223).

However, the ALJ also noted that, notwithstanding these impairments, Plaintiff had been found capable by physicians of performing sedentary or even light work with these impairments, with specified limitations. (R.pp. 220-223); see (R.pp. 151, 153-155, 161-162, 172-173, 175-182, 194-197, 336-337). The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms, her statements concerning the intensity, persistence and limiting effects of these symptoms was not entirely credible in light of the medical evidence and the statements of several physicians that Plaintiff was able to perform at least sedentary work. The restrictions placed on Plaintiff's physical abilities by her physicians as relate to her obesity were included by the ALJ in his findings and in the hypothetical

---

[5]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).

5



presented to the vocational expert at the hearing; (R.pp. 219, 379); and he also specifically considered whether Plaintiff met the requirements of § 1.04 of the Listings [disorders of the spine], finding that Plaintiff's impairments did not meet or equal the requirements of this listing. (R.p. 219).

The undersigned can find no reversible error in the ALJ's consideration of Plaintiff's obesity in rendering his decision based on this record. See Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964) [court scrutinizes the record as a whole to determine whether the conclusions reached are rational]; Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992) [ALJ properly considered whether claimant's impairments in combination were disabling by separately discussing claimant's impairments]. Plaintiff appears to argue that the ALJ was required to mention the term "obesity" repeatedly throughout his decision in order to show that he considered this impairment as part of his decision and RFC finding. However, such a frequent or repetitive reference to this term is not what is required. Rather, a plain reading of the decision clearly reflects that the ALJ found that Plaintiff's obesity was a severe impairment, that he considered the medical evidence concerning the effect this impairment had on Plaintiff's physical abilities in conjunction with the medical evidence concerning Plaintiff's other severe impairments, and that the effect all of these impairments had on Plaintiff's residual functional capacity were considered by the ALJ in making his final decision. Hence, even if the Court were to find that the ALJ could have been more clear with respect to this issue in his ruling, it would not warrant a reversal of the decision. *Cf.* Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996) ["An arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where...the deficiency probably had no practical effect on the outcome of the case"], quoting, Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987).



With respect to Plaintiff's argument that the ALJ conducted a "faulty listing analysis", the undersigned does not find that any reversible error was committed by the ALJ in his finding that Plaintiff did not meet the requirements of § 1.04 of the Listings. The ALJ specifically stated in his decision that, in order to meet this listing, there must be evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and positive straight leg raising tests, sitting and supine, *plus* there must be functional loss, which is defined as the inability to ambulate effectively on a sustained basis with this inability having lasted or be expected to last for at least twelve (12) months. (R.p. 219). See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. The ALJ then specifically found that the medical evidence did not reflect that Plaintiff's back disorder met all of the requirements of this listing, noting in the record where Plaintiff was found to have normal muscle strength as well as the medical findings that Plaintiff had no problems with her ambulation.[6] (R.pp. 221-223), citing to (R.pp. 123-126, 151, 169, 171, 194-197, 336-337).[7] See Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ["For a claimant to show that his impairment matches a Listing, he must show that it meets *all* of the specified criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."]. Contrary to

---

[6]The "inability to ambulate effectively" generally means that a claimant must require the use of hand-held assistive devices that limit the functioning of both upper extremities. To ambulate effectively, the claimant must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out the activities of daily living, travel without companion assistance, and from a place of employment or school. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B(2)(b)(1) and (2).

[7]Indeed, as late as March 17, 2005, it was noted during the course of a comprehensive orthopaedic examination that Plaintiff was able to ambulate without the use of an assistive device, with no instability noted, and that she had 5/5 strength in all muscle groups. (R.pp. 355-356).

7



Plaintiff's statement in her brief, the undersigned does not find that the "record strongly suggests that there is ample factual support for the contention that [Plaintiff's] spinal impairments rise to the level of Listing 1.04." The evidence reflects that Plaintiff did not exhibit atrophy with associated muscle weakness, there was no evidence of spinal arachnoiditis[8], nor is there evidence of an inability to ambulate effectively. Further, the state agency physicians who reviewed Plaintiff's medical records also did not find that Plaintiff met the requirements of any listing. (R.pp. 48-49, 175-184). See Ostronski v. Chater, 94 F.3d 413, 417 (8th Cir. 1996) ["The ALJ is entitled to rely on the opinions of reviewing physicians when considering whether the claimant meets the requirements of a listed impairment"]; 20 C.F.R. § 404.1526 [determination of whether a particular medical condition meets or equals a listed impairment is a medical judgment made at the initial and reconsideration stages of administrative review by the Commissioners designated to physicians and consultative medical specialists]; 20 C.F.R. § 404.1527(f). Therefore, while Plaintiff did possess some of the characteristics discussed in Listing 1.04, the ALJ did not commit any reversible error by failing to find that she met the overall requirements of this Listing. Sullivan, 493 U.S. at 530.

Plaintiff's complaints about the ALJ's evaluation of the medical evidence are also without merit. The ALJ's opinion reflects that he thoroughly reviewed the medical evidence from Plaintiff's treating and examining physicians, as well as the reports of the state agency medical

---

[8]Arachnoiditis is a neuropathic disease caused by the inflammation of the arachnoid, one of the membranes that surround and protect the nerves of the spinal cord. The arachnoid can become inflamed because of an irritation from chemicals, infection from bacteria or viruses, as the result of direct injury to the spine, chronic compression of spinal nerves, or complications from spinal surgery or other invasive spinal procedures. Inflammation can sometimes lead to the formation of scar tissue and adhesions, which cause the spinal nerves to "stick" together. http://en.wikipedia.org/wiki/Arachnoiditis.



consultants. Plaintiff cites to one section of the ALJ's decision where he states that "a medical consultant found that the claimant could perform lifting up to 10 occasionally and less than 10 pounds frequently and she could sit about 6 hours and stand/walk for at least 2 hours"; (R.p. 223); arguing (apparently) that this represented a summary of the medical evidence, with the ALJ then finding that Plaintiff possessed an RFC at odds with this summary or finding. However, a clear reading of the decision shows that this was merely a statement by the ALJ of one of the consultant's findings; see (R.pp. 175-184); it was not a "summary" of the medical evidence as found by the ALJ. The record reflects that Plaintiff was examined by numerous physicians whose findings are thoroughly chronicled by the ALJ in his decision, and almost all of whose records support the general degree of limitations found to exist by the ALJ.[9] See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly give significant weight to assessments of examining physicians]; Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessment of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]. The opinions of the state agency physicians who reviewed Plaintiff's medical records also support the ALJ's RFC finding. (R.pp. 175-182). See Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of non-examining physician can constitute substantial evidence to support the decision of the Commissioner]; Johnson v. Barnhart, 434 F.3d 650, 657 (4th Cir. 2005) [ALJ can give great weight to opinion of medical expert who has thoroughly reviewed the record]; see SSR 96-6p [Agency

---

[9]One notable exception was Dr. Edward Nolan, who issued a "to whom it may concern" letter on December 13, 2002 which contains sitting, standing and walking limitations which, if accepted, would suggest an inability to work. (R.p. 200). However, prior to issuing that letter Dr. Nolan apparently saw the Plaintiff on only one occasion, December 10, 2002, for a consultative visit, during which most of the information received was self reported by the Plaintiff. (R.pp. 198-199). Plaintiff's eligibility for DIB thereafter expired a few weeks later.

9



physicians are experts in the evaluation of medical issues for purposes of disability claims]. The ALJ properly exercised his authority in evaluating and weighing this evidence in reaching his decision, and the undersigned can find no reversible error in this record. See Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; see also Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual function limitations].

As for the evaluation of Plaintiff's subjective testimony, the decision reflects that the ALJ thoroughly reviewed the medical evidence as well as Plaintiff's own statements as to her condition, including her estimation that she could not stand for more than fifteen (15) minutes or sit for more than twenty (20) minutes, could not bend or stoop or reach overhead, and that she did not get relief from pain medications. After a thorough discussion of the medical evidence, the ALJ noted that several physicians had indicated that Plaintiff was able to perform at least sedentary work, that clinical findings consistently reflected 5/5 muscle strength, normal muscle tone and coordination, and that Plaintiff's allegations were not credible to preclude all work activity based on the overall evidence of record. (R.pp. 220-224). See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly consider inconsistencies between a plaintiffs testimony and the other evidence of record in evaluating the credibility of the plaintiffs subjective complaints]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]. While more detail can almost always be provided in these types of reports, the



undersigned can find no reversible error in the ALJ's treatment of the Plaintiff's subjective testimony in conjunction with the objective medical evidence of record, nor do I find that the ALJ failed to consider all of Plaintiff's impairments or conducted a flawed credibility analysis. Dryer v. Barnhart, 395 F.3d 1206, 1211( 11th Cir. 2005) [ALJ not required to specifically refer to every piece of evidence in the decision].  Further, the record in this case supports the ALJ's findings and conclusions. Thomas, 331 F.2d at 543 [court scrutinizes the record as a whole to determine whether the conclusions reached are rational]; Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) [the mere presence of impairments does not automatically entitle a claimant to disability benefits, there must be a showing of related functional loss]; Cruse v. Bowen, 867 F.2d 1183, 1186 (8`h Cir. 1989) ["The mere fact that working may cause pain or discomfort does not mandate a finding of disability"].  This review, evaluation and analysis also satisfied the requirements of SSR 96-8p. *Cf.* Roberts v. Masanari, 150 F.Supp.2d 1004, 1010 (W.D.Mo. 2001); Buchholtz v. Barnhart, 98 Fed.Appx. 540, 547 (7th Cir. 2004); Delgado v. Commissioner of Social Serv., 30 Fed.Appx. 542, 547-548 (6th Cir. 2002).

Finally, Plaintiff complains that the hypotheticals posed to the vocational expert at the hearing were improper and did not accurately reflect Plaintiff's true RFC.  The record shows that the ALJ obtained vocational expert testimony at the hearing, where the vocational expert was proffered a hypothetical which reflected the residual functional capacity found to exist by the ALJ. (R.p. 379). In response to this hypothetical, the VE identified several unskilled sedentary jobs which Plaintiff could perform with her limitations. (R.p. 380). While Plaintiff may disagree with the findings of the ALJ, the undersigned has previously concluded that these findings are supported by substantial evidence in the record as that term is defined in the applicable caselaw. Hence, the hypothetical given

11



by the ALJ to the vocational expert was proper, and the undersigned finds no grounds in the ALJ's treatment of the vocational expert's testimony for reversal of the final decision of the Commissioner. Lee v. Sullivan, 945 F.2d 687, 694 (4th Cir. 1991); see also Martinez v. Heckler, 807 F.2d 771, 773 (9th Cir. 1986).

## Conclusion

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

September 18, 2007

